UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| HELEN V. COLLINS | ) | |
| | ) | |
| V. | ) | NO. 2:10-CV-252 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

<u>REPORT AND RECOMMENDATION</u>

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation regarding the administrative denial of the plaintiff's claim for disability insurance benefits under the Social Security Act. The denial of benefits came following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 12 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 45 years of age at the time of her disability onset date, September 16, 2007. She has a high school education. Her past relevant work experience is not relevant in that the ALJ determined her impairments prevented her from returning to that relevant work.

Plaintiff's medical history is fairly described in the plaintiff's brief as follows:

> Plaintiff received treatment at Slonaker Medical Associates from July 28, 2004 through August 18, 2004, due to right shoulder pain, ear infection, and spastic colon (Tr. 237-238). Plaintiff received treatment at Johnson City Medical Center on August 3, 2004, due to a seven month history of worsening abdominal pain. The diagnoses were abdominal pain and left renal cyst (Tr. 239-246). Plaintiff received treatment at Unicoi Memorial Hospital on September 24, 2004 and June 9, 2005, due to back pain, sinusitis, and ear infection (Tr. 247-257).
> Plaintiff received treatment at Medical Care Walk-In Clinic from November 19, 2004 through April 19, 2006. Conditions and complaints addressed include chronic low back pain with spasms and radiation, irritable bowel syndrome, thoracic spine pain, right upper extremity pain, degenerative disc disease, degenerative joint disease, anxiety, insomnia, chronic neck pain with radiation, and left foot tingling (Tr. 258-332). On October 24, 2005, MRI of the lumbar spine revealed a broad based central disc herniation at L4-5, deforming the anterior aspect of the thecal sac and lying immediately adjacent to the L5 nerve roots in their lateral recess (Tr. 331).
> Plaintiff underwent consultative exam by Dr. Karl W. Konrad on February 28, 2006. Presenting problems included neck pain radiating into the upper back, lower back, and arms; intermittent numbness of both arms; irritable bowel syndrome, alternating between constipation and diarrhea; insomnia; heart palpitations; and anxiety. Dr. Konrad noted no diagnosis and no impairment-related physical limitations (Tr. 333-335).
> On March 18, 2006, Plaintiff underwent consultative exam by Art Stair, M.A., LPE. Plaintiff reported that she gets depressed because she cannot work anymore; that she has anxiety over the bills that she cannot pay; that she can't sleep

at night; that she sometimes gets so anxious that she throws up; that there are some days that she does not want to talk with anyone; and that she completed the eighth grade with low grades. In summary, Mr. Stair noted Plaintiff reports a mild degree of depression characterized by worry, tension, and sleep disturbances, and she reports a mild degree of depressed affect characterized by feelings of sadness, irritability, fatigue, and sleep disturbances. The diagnosis was adjustment disorder with mixed anxiety and depressed mood, chronic, mild, with a current global assessment of functioning [hereinafter "GAF"] of approximately 60 (Tr. 336-341).

On March 28, 2006, a reviewing state agency physician opined Plaintiff could lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; could stand/walk for a total of about six hours in an eight-hour workday; and could sit for a total of about six hours in an eight-hour workday (Tr. 342-349). On April 15, 2006, a reviewing state agency psychologist opined Plaintiff did not have a severe mental impairment(s) (Tr. 350-3.63).

On November 17, 2006, Plaintiff underwent psychological evaluation by Licensed Clinic Psychologist Robert C. Miller. Plaintiff's personal hygiene was fair; her gait was slow and her posture was slouched; her motor behavior was slow; her level of responsiveness was lethargic; her primary facial expression was sad; her mood and pervasive and sustained emotional state was anxious and distracted; her affect was flat; her attention was somewhat distracted by pain and worry; and her concentration was affected by performance anxiety and general anxiety. On the MINI, Plaintiff endorsed symptoms of depression including feeling depressed or down for over two weeks and losing interest in activities that she once enjoyed. Symptoms of depression were noted to include appetite and sleep disturbance, feeling fidgety and restless, and feeling tired most days. Anxiety symptoms were noted to include panic attacks with agoraphobia, racing heart, trembling, shaking and choking sensation, chest pressure, nausea, tingling and numbness in parts of her body, and hot flushes or chills. Signs of anxiety during the exam included pallor, shortness of breath, body swaying, ringing of hands, sighing, a worked look, and restlessness. Plaintiff also reported engaging in some obsessive-compulsive behaviors. Plaintiff scored below the cut-off for malingering on the MMPI-2 and the profile was considered valid and interpretable. The results indicated Plaintiff is depressed and dysphoric; she is pessimistic about the future and feels worthless and useless; she has a restricted range of interest and has become more socially isolated; she feels overwhelmed about making life decisions; she is reclusive and has become somewhat suspicious; she worries and ruminates; she is tense and anxious, which affects her concentration; she feels that she has let herself and others down; she has somatic problems, sleep disturbance, and despondency; she has low energy level; and she is currently unable to muster the energy and concentration to be productive.

The diagnoses were panic disorder with agoraphobia and major depressive disorder, moderate, with a current GAF of 45. Dr. Miller opined Plaintiff has no useful ability (poor) to relate to coworkers; deal with the public; interact with supervisors; deal with work stresses; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; or relate predictably in

3

social situations. Plaintiff's ability to function was noted to be seriously limited, but not precluded (fair) in the areas of follow work rules; use judgment with the public; maintain attention and concentration; understand, remember, and carry out detailed job instructions; maintain personal appearance; and demonstrate reliability (Tr. 364-369, 372-374).

Plaintiff resumed treatment at Slonaker Medical Associates from May 23, 2006 through May 16, 2007, during which time she was suffering chronic neck pain, insomnia, bilateral shoulder pain, hypertension, osteoarthritis, chronic low back pain, left foot and bilateral hand numbness, hot flashes, and anxiety (Tr. 375-389).

Plaintiff received counseling by LPC Rita Richardson from August 2, 2006 through September 5, 2006. Problems noted include anxiety, depression, tearfulness/crying spells, sleep disturbance, decreased energy and interest, memory problems, impairment in concentration, social withdrawal, difficulty coping with change, and frequent worry (Tr. 393-394).

On June 28, 2007, FNP Suzanne S. Swihart opined Plaintiff can lift/carry a maximum of less than five pounds; can stand/ walk for a total of one to two hours in an eight-hour day, 10-15 minutes without interruption; can sit for a total of 30 minutes to one hour in an eight-hour day; can never climb, stoop, kneel, balance, crouch, or crawl; is limited in her ability to reach, handle, feel, push/pull, hear, and speak; and suffers environmental restrictions in regard to exposure to heights, moving machinery, temperature extremes, noise, fumes, and vibration. In summary, FNP Swihart opined Plaintiff would not be able to function in a stressful environment and is unable to work secondary to her osteoarthritis, degenerative disease, anxiety, and depression (Tr. 395-398).

Plaintiff received counseling by Yanah T. Sullins, M.S., M.Ed. from May 10, 2007 through July 24, 2007. Plaintiff carried the diagnoses of major depressive disorder, moderate, and panic disorder with agoraphobia, with a current GAF of 45. Problems noted during treatment include extreme anxiety, depression, depressed mood, appetite disturbance, sleep disturbance, low energy, psychomotor retardation, agitation, lability, irritability, panic attacks, phobias, obsessions/compulsions, sexual dysfunction, history of abuse, marital problems, frequent unhappiness, and racing thoughts. Mental status exams were remarkable for blunted affect, depressed and anxious mood, soft speech, and agitated motor activity (Tr. 404-413). On June 28, 2007, Mr. Sullins opined Plaintiff has no useful ability (poor) to relate to coworkers; deal with public; interact with supervisors; deal with work stresses; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; or relate predictably in social situations. Plaintiff's ability to function was noted to be seriously limited, but not precluded (fair) in the areas of follow work rules; use judgment with the public; maintain attention/concentration; understand, remember, and carry out detailed job instructions; maintain personal appearance; and demonstrate reliability. Mr. Sullins further opined Plaintiff's impairment(s) or treatment would cause her to be absent from work more than two days a month (Tr. 401-403).

Plaintiff received treatment at Watauga Behavioral Health Service from October 24, 2007 through February 1, 2008. Conditions and complaints addressed

4

include excessive crying, feeling overwhelmed with stressors and difficulty adjusting to life changes, 20 pound weight loss due to lack of appetite, social withdrawal, insomnia, worrying, diminished ability to think, distractibility, impairment judgment, impaired memory, poor attention or concentration, helplessness, hopelessness, poor energy, depression, loss of interest or pleasure, low self-esteem, marked mood shifts, and anxiety (Tr. 417-423). On January 3, 2008, Plaintiff was disheveled and underweight and her mood was sad. Dr. Garatli diagnosed major depression, severe, recurrent, with a current GAF of 55 (Tr. 421-422).

Plaintiff continued treatment at Slonaker Medical Associates from June 15, 2007 through March 7, 2008, due to allergies, insomnia, osteoarthritis, anxiety, depression, neck pain, weight loss, degenerative disc disease, scoliosis, numbness in the hands, nausea, low back pain, irritable bowel syndrome, decreased appetite, excessive worry, and herniated L4-L5 disc (Tr. 427-436).

Plaintiff underwent consultative exam by Dr. Krish Purswani on April 30, 2008. Presenting complaints included low back pain radiating down both legs, neck pain radiating to both arms, anxiety, depression, daily panic attacks, and irritable bowel syndrome with alternating diarrhea and constipation. Exam was remarkable for decreased neck range of motion, moderate right knee crepitus, slight left knee crepitus, and decreased back range of motion. The diagnoses were chronic low back pain; herniated disc per patient, unconfirmed; chronic neck pain; anxiety; depression; panic disorder; irritable bowel syndrome; and nicotine dependence. Dr. Purswani opined Plaintiff can lift 20 pounds 2/3 of the time in an eight-hour day from the floor; can stand and walk with breaks for a total of seven hours in an eight-hour day; and can sit for a total of eight hours in an eight-hour day (Tr. 454-457).

On May 10, 2008, a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the general public. In summary, Dr. Davis opined Plaintiff can understand and remember simple and detailed tasks; can concentrate and attend to the same tasks, despite some difficulty; can interact with coworkers and supervisors without significant limitations; can relate with the general public despite some difficulty; and can adapt to work-like setting and changes as needed (Tr. 462-479). On January 26, 2009, a second reviewing state agency psychologist noted affirming this assessment as written (Tr. 416).

On July 8, 2008, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; and can sit for a total of about six hours in an eight-hour workday (Tr. 480-487). On January 17, 2009, a second reviewing state agency physician noted affirming this assessment as written (Tr. 415).

Plaintiff continued treatment at Watauga Behavioral Health Service from June 6, 2008 through September 10, 2009, during which time she was suffering

5

anxiety, nervousness, homelessness, sleep disturbance, fluctuating appetite, grief, poor self-esteem, stress, difficulty dealing with change, frequent crying spells, sad mood, social isolation, and restricted affect (Tr. 492-495, 509-568).

    Plaintiff continued treatment at Slonaker Medical Associates from April 7, 2008 through October 30, 2009. Problems noted during this time include weight loss, chronic low back pain secondary to degenerative disc disease with herniated disc, stress, right hip pain, numbness in the arms and legs, neck pain, irritable bowel syndrome, anxiety, depression, excessive worry, insomnia, left shoulder pain, chronic neck pain, osteoarthritis, chronic obstructive pulmonary disease (COPD), allergies, thoracic spine pain, and right wrist pain (Tr. 499-507, 598-619).

    On October 30, 2009, Dr. Slonaker opined Plaintiff can lift/carry a maximum of 10-15 pounds occasionally, five pounds frequently; can stand/walk for a total of three to four hours in an eight-hour day, 40 minutes without interruptions; can sit for a total of three to four hours in an eight-hour day, 40 minutes without interruption; can never climb or crawl; can occasionally stoop, kneel, and crouch; can frequently balance; is limited in her ability to reach, handle, and push/pull; and suffers environmental restrictions in regard to exposure to heights, moving machinery, temperature extremes, humidity, and vibration (Tr. 591-593).

    On November 9, 2009, FNP Swihart opined Plaintiff can lift/carry a maximum of five pounds; can stand/walk for a total of one to two hours in an eight-hour day, 10-15 minutes without interruption; can sit for a total of 30 minutes to one hour in an eight-hour day; can never climb, stoop, kneel, balance, crouch, or crawl; is limited in her ability to reach, handle, feel, push/pull, hear, and speak; and suffers environmental restrictions in regard to exposure to heights, moving machinery, temperature extremes, noise, fumes, and vibration. In summary, FNP Swihart opined Plaintiff would not be able to function in a stressful environment and is unable to work secondary to her osteoarthritis, degenerative disc disease, anxiety, and depression (Tr. 595-597).

Document 13, pgs. 2-9].

At the administrative hearing, the plaintiff testified that she owns and walks her dog. (Tr. 31). She stated that she cooks her meals, does her laundry and does her own grocery shopping. (Tr. 33-34). The ALJ asked various hypothetical questions to a vocational expert ["VE"], Dr. Norman Hankins. First, the ALJ asked Dr. Hankins to assume a person of the plaintiff's age, education and past work experience. He asked him to assume she could do medium work with "occasional posturals," was "better with things than people," and was

6

limited to simple, routine, repetitive work. When asked if there were jobs, the VE identified 2 million in the nation and 40,000 in the region. (Tr. 35-36). Next, the ALJ asked to assume the same limitations except she could only function at the light exertional level. He identified 25,000 regional and 1.5 million national jobs. (Tr. 36). He then asked Dr. Hankins to assume the same exertional level and restrictions, but with a sit/stand option added. Dr. Hankins identified 27,000 jobs in the region and 915,000 in the nation which such a person could perform. (Tr. 36-37). Finally, at the sedentary level with the same restrictions and the sit/stand option, he identified 5,200 regional and 179,000 national jobs. (Tr. 37). After a moment's reflection however, Dr. Hankins stated that there was also the job of sedentary cashier, of which there would be 14,178 jobs in the region and 700,000 in the nation. (Tr. 37-38). If plaintiff's testimony regarding her conditions was all correct, there would be no jobs. (Tr. 38). Also, if she were limited to the extent opined by Dr. Slonaker, there would be no jobs. (Tr. 39).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of anxiety, depression, osteoarthritis of the neck, degenerative disc disease, and irritable bowel syndrome. (Tr. 13). He found that she had the residual functional capacity ["RFC"] to perform light work, except that should could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, and balance, stoop, kneel, crouch and crawl. She could perform simple, routine, repetitive tasks, better with things than people, and that she must have a sit/stand option. (Tr. 15). He then stated his rationale. He defined the factors he must consider in evaluating the plaintiff's credibility (Tr. 16). He found that she was not credible to the extent her asserted symptoms were inconsistent with his RFC finding. He recounted the reasons

7

from her medical records for reaching this conclusion, such as her not having a need for surgery and the helpfulness of her medications with her physical symptoms. (Tr. 17).

He then discussed the weight given to the various medical sources. He dealt extensively with the report of her treating physician, Dr. Slonaker. He noted his restrictive assessment was not consistent with his treatment records and the record as a whole, and gave examples. He found Dr. Purswani's assessment more persuasive and gave it great weight. Again, he stated the reasons why. (Tr. 18). He then addressed each of the state agency opinions, both mental and physical, and found them "consistent with the record." (Tr. 18-19). He did not mention or discuss the treatment notes and opinion of plaintiff's treating nurse practitioner, Suzonne Swihart, who apparently practices in Dr. Slonaker's office since her assessment is contained in the same exhibit as the records from Dr. Slonaker's office (Exhibit 34).

Based upon the testimony of the VE, the ALJ found there was a substantial number of jobs the plaintiff could perform with the RFC. Accordingly, he found that she was not disabled. (Tr. 20).

Plaintiff alleges that the ALJ erred in two respects. First, she asserts that the ALJ did not give appropriate, controlling weight to the opinion of Dr. Slonaker. Second, she stated that it was reversible error to not mention or discuss the opinion of Nurse Swihart. Plaintiff raises no argument regarding the plaintiff's mental RFC and further argument on that is waived.

With respect to Dr. Slonaker's opinion, the ALJ went to great lengths to state why he gave it little weight, as he is required to by the appropriate regulations and Social Security

8

Rulings. He noted her daily activities, which would be virtually impossible for someone with the severe, less than sedentary restrictions opined by Dr. Slonaker. He pointed out the findings and analysis of Dr. Purswani, and the opinions of the state agency doctors, all of whom found the plaintiff far *less* restricted than the ALJ ultimately found. The ALJ exercised his prerogative as finder of fact *and* adequately explained his reasons for giving less weight to Dr. Slonaker.

It is true that the ALJ did not mention Nurse Swihart's assessment. However, as pointed out by the Commissioner, there is not a *per se* substantive requirement for the ALJ to discuss opinions from "other sources" who are not treating physicians or psychologists. It is necessary in that regard that if an ALJ elects not to discuss the weight given to such "other sources," he must "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p, 2006 WL 2329939.

In this case, thanks to the diligence of the ALJ in documenting his reasoning with respect to Dr. Slonaker, the Court had no problem following "the adjudicator's reasoning." The exact same reasons which justified his assignment of little weight to Dr. Slonaker would apply equally to the opinion from Nurse Swihart. If the ALJ had good cause to discount the treating physician then it is frankly illogical to assume that the additional, *and even more restrictive*, opinion of a nurse practitioner *who worked in that doctor's office* would be more highly regarded. In that regard, it cannot even be said her opinion might have had "an effect on the outcome of the case."

9

The ALJ's RFC finding and his finding of credibility of the plaintiff was supported by substantial evidence. Likewise, he adequately explained his reasons for the weight assigned the treating physician. His analysis was well-stated and his failure to specifically mention and discount the opinion of Nurse Swihart was unnecessary and not required in this circumstance. Accordingly, it is respectfully recommended that the Motion for Summary Judgment [Doc. 12] of the plaintiff be DENIED, and the Motion for Summary Judgment of the defendant Commissioner be GRANTED.[1]

Respectfully submitted:

s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).